# United States District Court
# Central District of California

| | |
|---|---|
| TANIA BATACHE,<br><br>        Plaintiff,<br><br>    v.<br><br>ROQUE SANTI, et al.<br><br>        Defendants. | Case No. 2:18-cv-06907-ODW(KS)<br><br>**ORDER GRANTING MOTION TO DISMISS [25]; DENYING MOTION FOR PRELIMINARY INJUNCTION [15]; AND DENYING MOTION TO STRIKE COMPLAINT OF PUNITIVE DAMAGES [26]** |

## I.    INTRODUCTION

Plaintiff Tania Batache moves the Court for a Preliminary Injunction to prevent Defendants Roque Santi and Mafalda Fontana ("Defendants") from selling real property prior to a trial on the merits. (ECF No. 15.) Conversely, Defendants move for Dismissal of Plaintiff's claims. (ECF No. 25.) Having reviewed the parties' submissions and with the benefit of oral argument on November 4, 2018, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction, **GRANTS** Defendants' Motion to Dismiss, and **DENIES** Defendants' Motion to Strike as **MOOT**.

## II.    BACKGROUND

Plaintiff owns two residential properties, one in the City of Los Angeles (the "Venice Property") and the other in the City of Manhattan Beach (the "Manhattan Beach Property"). (*See* Compl. ¶¶ 15–18, ECF No. 1.) In 2014, Plaintiff and

Defendants entered into negotiations to provide Plaintiff a loan. (*Id.* ¶ 20.) These negotiations eventually bore fruit, and Defendants provided Plaintiff a loan for $630,000. (*Id.* ¶ 24.) In exchange for the loan, Plaintiff signed and delivered to Defendants a promissory note secured by a deed of trust. (*Id.*) The deed of trust is collateralized against both the Venice Property and the Manhattan Property, giving Defendants a third position right in those properties. (*Id.* ¶ 20.)

Subsequently, on April 1, 2015, the parties entered into a "Loan Modification Agreement." (*Id.* ¶ 32.) The Loan Modification Agreement extended the maturity date of the initial loan to October 1, 2015. (*Id.* ¶ 34.) Plaintiff alleges that the principal amount she owed Defendants when she entered into the Loan Modification Agreement was $661,293.18 and that this amount was subject to monthly interest accruing at a rate of 14% per year. (*Id.* ¶ 35.) Plaintiff's consideration for the Loan Modification Agreement included a $12,966.53 extension fee which was added to the principal balance. (*Id.* ¶ 36.) In addition, Defendants received the right to a percentage of the sale price if Plaintiff sold the Venice or Manhattan Property. (*Id.* ¶ 37.)

The following year, on May 27, 2016, Defendants recorded "Notices of Default" against both the Venice and Manhattan Properties with the Los Angeles County Recorder's Office. (*Id.* ¶ 40–41.) The Notices of Default provided that Defendants were owed $804,022.47. (*Id.*) Several months later, on August 19, 2016, Plaintiff filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. (*Id.* ¶ 42.) This bankruptcy action, then pending in the Central District of California, was dismissed on December 31, 2017. (*Id.*) Plaintiff filed for bankruptcy a second time on January 2, 2018. (*Id.* ¶ 43.) In turn, the Defendants filed a "Notice of Sale" against the Venice Property on August 2, 2018. (*Id.* ¶ 44.) The Notice of Sale provided that the total amount due to Defendants was $1,213,534.04. (*Id.*) The foreclosure sale was set to commence on August 30, 2018. (*Id.*)

On August 10, 2018, Plaintiff brought this action raising claims arising out of the loan she obtained from Defendants. (*See generally* Compl.) On August 22, 2018,

Plaintiff filed an *Ex Parte* Application seeking entry of a temporary restraining order ("TRO") and issuance of an order to show cause why a preliminary injunction should not issue (Ex Parte Application ("Application"), ECF No. 10). The Application sought to enjoin Defendants "from selling, attempting to sell, or causing to be sold Plaintiff's real properties commonly known as 41 Clubhouse Drive, Los Angeles, California 90291 (the 'Venice Property') and 520 Manhattan Beach Boulevard, Manhattan Beach, California 90266 (the 'Manhattan Beach Property')." (*Id*.) This Application mooted when the Parties agreed to postpone the sale of the property until October 8, 2018. (ECF No. 15.) Accordingly, the court issued an OSC why a preliminary injunction should not issue and set the matter for hearing on October 1, 2018. (*Id*.) The matter was subsequently transferred to this Court on September 24, 2018, and the Court held a hearing on whether a preliminary injunction should issue on November 4, 2018.

### III. LEGAL STANDARDS

#### A. MOTION TO DISMISS

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A court may also dismiss a complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2) - a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These factual allegations must provide fair notice and enable the opposing party to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B. PRELIMINARY INJUNCTION**

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. An injunction is an exercise of a court's equitable authority which should not be invoked as a matter of course, but "only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 559 U.S. 700, 714 (2010). To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of the equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The moving party bears the burden of meeting all four *Winter* elements. *DISH Network v. FCC*, 653 F.3d 771, 776–77 (9th Cir. 2011).

**IV. DISCUSSION**

**A. JURISDICTION**

In federal court, subject matter jurisdiction may arise from either "federal question jurisdiction" or "diversity of citizenship" when the amount in controversy exceeds $75,000. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). To properly allege diversity jurisdiction, a plaintiff must claim damages in excess of

$75,000 and each defendant must be a citizen of a different state from each plaintiff. *See* 28 U.S.C. § 1332; *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008). Here, as all parties are residents of California, there is no diversity jurisdiction. However, the Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff pleads claims under the Truth in Lending and Home Owner Equity Protection Acts. Moreover, the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 because Plaintiff's state law claims arise out of the same common nucleus of operative fact as Plaintiff's Truth in Lending and Home Owner Equity Protection Act claims.

### B. TRUTH IN LENDING ACT AND HOEPA CLAIMS

Plaintiff argues that Defendants violated various provisions of the Truth in Lending Act ("TILA") as well as the Home Owners Equity Protection Act ("HOEPA"). However, for reasons that follow, the Court does not reach the merits of Plaintiff's TILA (and HOEPA by extension because the Act is an amendment to TILA) claims because they are time-barred.

#### 1. Truth in Lending Act

TILA was enacted "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing." 15 U.S.C. § 1601(a). "[T]he Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 872 (N.D. Cal. 2010) (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)). TILA grants a borrower the right to civil damages, which must be brought within one year from the date on which the transaction underlying the alleged violation is consummated. 15 U.S.C. §§ 1635(f), 1640(a), (e); *Conder v. Home Sav. of Am.*, 2010 WL 2486765, at *2–3 (C.D. Cal. June 14, 2010) (citing *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986)).

TILA rescission claims "expire three years after the date of the consummation of the transaction or upon the sale of the property, whichever comes first." 15 U.S.C. § 1635(f). In contrast to a TILA damages claim, TILA rescission claims contain a three-year statute of repose, and is not subject to equitable tolling. *See Beach*, 523 U.S. at 412 (stating that "[section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period, even if a lender failed to make the required disclosures.") However, a suit for rescission under TILA may be brought after the three-year period, so long as written notice was provided to the lender within the three-year period. *See Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015).

Plaintiff does not offer argument as to whether her rescission claim is timely under 15 U.S.C. § 1635(f), but instead argues that her rescission claim is timely under 11 U.S.C. 108(a) of the Bankruptcy Code because "[s]ection 108(a) extends the time period for a chapter 11 debtor-in-possession to bring suit to up to two years after the order for relief." (Reply in Support of Ex Parte Application 5, ECF No. 21.) Therefore, Plaintiff maintains she has until 2020 to file a lawsuit seeking TILA rescission. Plaintiff begins by citing to *In re Dawson*, where the Bankruptcy Court for the District of Columbia held that TILA claims filed outside the three-year window were timely under 11 U.S.C. § 108(a). 411 B.R. 1 (Bankr. D.D.C. 2008). There is one issue with Plaintiff's argument, however: she swiftly shields herself with 108(a), while ignoring the likelihood that 108(b) may be more appropriately linked to her claims.

Whether Plaintiff can proceed with her claim for rescission depends upon whether § 108(a) or § 108(b) applies to the facts in this case. Section 108(b) provides:

> "Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired

before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of--

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

11 U.S.C. § 108(b)(1), (2).

Pursuant to TILA, the right to rescind is effectuated "by notifying the creditor, in accordance with regulations of [the Federal Reserve] Board, of [the consumer's] intention to do so." *Thomas v. GMAC Residential Funding Corp.*, 309 B.R. 453, 455 (D. Md. 2004); *see also* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23. Specifically, "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business." 12 C.F.R. § 226.23(2). Therefore, by the terms of the statute and the regulation, the consumer must give *notice* to exercise the right to rescind. As such, the applicable subsection under section 108 for purposes of extension of time is section 108(b), providing an additional sixty days from the order for relief where that extension is longer than the period provided by nonbankruptcy law.

Here, the Loan consummated on February 24, 2014, so TILA provided the Plaintiff until February 24, 2017, to file such notice. However, she took no action to rescind the loan under TILA. Moreover, she filed her first bankruptcy on August 19, 2016, so § 108(b) provided her 60 days to file a rescission claim, which she also did not do. During oral argument, the Court inquired as to whether Plaintiff provided rescission notice, and she indicated she never did. Thus, it is clear from the evidence that Plaintiff did not notify Defendants of her intention to rescind the loan within the time allotted.

Accordingly, Plaintiff's TILA rescission claim is time barred.

### 2. Home Ownership and Equity Protection Act

Plaintiff's Second Cause of Action seeks rescission under the Home Ownership and Equity Protection Act ("HOEPA"), an amendment to TILA codified at 15 U.S.C. § 1639, for the alleged failure to provide additional disclosures required by HOEPA. HOEPA creates "a special class of regulated loans that are made at higher interest rates or with excessive costs and fees." *Lynch v. RKS Mortg. Inc.*, 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008) (quoting *In re Community Bank of Northern Va.*, 418 F.3d 277, 304 (3d Cir. 2005)). To avail oneself of the protections afforded by HOEPA, one of two factors must be established: "either the annual percentage rate of the loan at consummation must exceed by more than 10 percent the applicable yield on treasury securities, or the total points fees payable by the consumer at or before closing must be greater than 8 percent of the total loan amount, or $400.00." 15 U.S.C. § 1602(aa)(1), (3); *see also* 12 C.F.R. § 226.32(a)(1).

As the Court has determined that Plaintiff's TILA and HOEPA claims are barred by TILA's statute of repose, she cannot state a claim upon which relief can be granted. Thus, Defendant's Motion to Dismiss Plaintiff's TILA claims is **GRANTED.**

### C. SUPPLEMENTAL JURISDICTION

Given that the TILA/HOEPA claims are time-barred, the remainder of Plaintiff's claims center on California law. When the issues giving rise to original jurisdiction are eliminated, the Court is not required to consider the pendant state issues. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

The Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The federal consumer financial law claims and state law claims share a common nucleus of operative fact and are "part of the same case or controversy."

Nevertheless, once the Court acquires supplemental jurisdiction, it may decline to exercise it if:

(1) the claim raises a novel or complex issue of state law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995). Given that original jurisdiction is predicated on federal questions and the Court has deemed the claims time-barred, the Court refuses to exercise supplemental jurisdiction over Plaintiff's state law claims.

### D. LEAVE TO AMEND

In general, a court should liberally allow a party to leave to amend its pleading. *See* Fed. R. Civ. P. 15(a); *see also Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001) ("A district court shall grant leave to amend freely when justice so requires," and "this policy is to be applied with extreme liberality.") However, the Court may deny leave to amend where amendment would be futile. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Plaintiff's claim is time barred; thus, no amendment could cure the deficiency and renders leave to amend futile.

### E. PRELIMINARY INJUNCTION

The Court has determined that Plaintiff's claims are time-barred, so preliminary injunctive relief is inappropriate because Plaintiff cannot prevail on the merits. *See Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007) ("Once a court determines a complete lack of probability of success or serious questions going to the merits [in a preliminary injunction analysis], its analysis may end, and no further

findings are necessary."). Accordingly, the Court declines to undertake further injunction analysis.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction, (ECF No. 15.) and **GRANTS** Defendant's Motion to Dismiss without Leave to Amend. (ECF No. 25.) In light of the Court's conclusions, Defendant's Motion to Strike Complaint for Punitive Damages is **DISMISSED AS MOOT.** (ECF No. 26.)

All previously calendared dates are hereby vacated, and the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

November 15, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**